IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

DRUSILLA LOWERY and STEVE
LOWERY,

       Plaintiffs,

  v.

CLAYTON REINHARDT, D.O., SHASTA
COMMUNITY HEALTH CENTER,
DEPARTMENT OF HEALTH AND HUMAN
SERVICES and UNITED STATES OF
AMERICA,

       Defendants.
_____/

No. Civ. S-07-0880 RRB DAD

**Memorandum of Opinion**
**and Order**

Plaintiffs Drusilla Lowrey ("Drusilla") and Steve Lowery (collectively "Plaintiffs") brought an action against Drusilla's former physician Clayton Reinhardt ("Dr. Reinhardt"), Shasta Community Health Center ("SCHC"), Department of Health and Human Services ("DHHS") and the United States of America ("United States") alleging injuries arising out of sexual relations

between Drusilla and Dr. Reinhardt.[1]  The United States now moves to dismiss or for summary judgment for lack of subject matter jurisdiction.  SCHC and Dr. Reinhardt (collectively "Defendants") oppose the motion.  Plaintiffs also oppose the motion in part.[2]  Docket at 27.  For the reasons stated below, the court GRANTS the motion.[3]

## I.  BACKGROUND

Dr. Reinhardt, D.O.,[4] is a licensed physician who was employed by SCHC, a federally-funded healthcare facility, at the time of the alleged sexual relations giving rise to this action. Compl. ¶¶ 3, 4, 6.  Dr. Reinhardt treated, diagnosed and prescribed medicine to Drusilla for various conditions,

---

[1] The United States is a defendant under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671 et seq., because the SCHC, as a recipient of federal funds, is an employee of the United States pursuant to the Federally Supported Health Centers Assistance Act.  See 42 § U.S.C. 233(g)-(n).

[2] Plaintiffs oppose the motion insofar as the United States seeks a determination that Dr. Reinhardt was not acting within the scope of his employment during the sexual relations giving rise to this action.  Docket at 27.

[3] Inasmuch as the Court concludes the parties have submitted memoranda thoroughly discussing the law and evidence in support of their positions, it further concludes oral argument is neither necessary nor warranted with regard to the instant matter.  See Mahon v. Credit Bureau of Placer County, Inc., 171 F.3d 1197, 1200 (9th Cir. 1999)(explaining that if the parties provided the district court with complete memoranda of the law and evidence in support of their positions, ordinarily oral argument would not be required).

[4] Doctor of Osteopathic Medicine.

including Lupus, Fibromyalgia, Irritable Bowel Syndrome, Depression, Reynaud's Phenomenon, Gastritis and Osteopenia. Id. ¶ 3.

In September 2005, Dr. Reinhardt kissed Drusilla and touched her breasts during an appointment at SCHC. Compl. ¶ 9. In late October or early September 2005, while at SCHC, Dr. Reinhardt invited Drusilla to meet him at a hotel. Id. ¶ 10. At the hotel, Dr. Reinhardt provided Drusilla with alcohol and prescription medicines, including Chloral Hydrate syrup, Oxycodone, Provigil, Lunesta, Bentyl, Axert and Mobic. Id. During this encounter, Dr. Reinhardt and Drusilla engaged in sexual intercourse. Id. In November and December 2005, Dr. Reinhardt and Drusilla met again on two separate occasions at hotels and engaged in sexual intercourse. Id. ¶¶ 11-12. During these encounters, Dr. Reinhardt also provided Drusilla with alcohol and prescription medicines. Id. Plaintiffs allege that Dr. Reinhardt supplied Drusilla with alcohol and prescription medicines to induce/encourage her to engage in sexual relations with him. Id. ¶¶ 10-11, 27.

In December 2005, Lynne G. Pappas, a physician at SCHC, informed Drusilla that Dr. Reinhardt had told her about his sexual relationship with Drusilla. Compl. ¶ 35. On December 29, 2005, SCHC informed Drusilla that it would no longer provide her with medical services and that she should

seek medical care elsewhere. Id. ¶ 36. On May 9, 2007, Plaintiffs filed the instant action alleging the following claims for relief: (1) medical malpractice; (2) negligence per se; (3) breach of fiduciary duty; (4) intentional infliction of emotional distress; (5) sexual harassment; (6) respondeat superior; and (7) loss of consortium. Compl. On August 6, 2007, SCHC received a letter from the United States Department of Justice for the Eastern District of California ("Attorney General's Office"), as designee of the Attorney General, denying SCHC's request for immunity and certification under the Federal Tort Claims Act, 28 U.S.C. §§ 1346, 2671-2678 ("FTCA"), pursuant to the Federally Supported Health Care Centers Assistance Act, 42 U.S.C. §§ 233(a)(g)-(n) ("FSHCAA"), for the lawsuit filed by Plaintiffs. Decl. of Michael V. Ubaldi ("Ubaldi"), Exh. A. The letter informed SCHC that it was not entitled to immunity under the FTCA pursuant to the FSHCAA because the injuries suffered by Drusilla (as set forth in the complaint) did not result from Dr. Reinhardt's performance of medical, surgical, dental or related functions while he was acting within the scope of his employment. Id. On October 15, 2007, the SCHC sought reconsideration of this determination. Decl. of Ubaldi, Exh. B. On December 17, 2007, the Attorney General's Office affirmed its earlier denial of immunity and certification under the FTCA. Decl. of Ubaldi, Exh. C.

4

On January 3, 2008, the United States brought a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) or for summary judgment for lack of subject matter jurisdiction.  Docket at 20.  On January 18, 2007, SCHC filed a motion to certify seeking review of the Attorney General's denial of its request for immunity and certification under the FTCA pursuant to the FSHCAA.  Docket at 23.  Specifically, SCHC seeks a determination that it is entitled to immunity because the injuries alleged in the complaint resulted from Dr. Reinhardt's performance of medical or related functions while he was acting within the scope of his employment.  Id.  The United States opposes the motion.  Docket at 34.[5]

## II. DISCUSSION

The United States argues that dismissal for lack of subject matter jurisdiction is appropriate because the FTCA does not provide a waiver of its sovereign immunity for the torts alleged in the complaint, and therefore it is not a proper party to this action.  More particularly, the United States argues that dismissal is appropriate because the alleged injuries were not the result of Dr. Reinhardt's performance of medical or related

---

[5] Because resolving the question of whether Dr. Reinhardt acted within the scope of his employment for purposes of FTCA immunity is determinative of whether certification and immunity were properly denied, the court need not separately address Plaintiffs' motion to review the Attorney General's denial of certification and immunity under § 233.

functions while he was acting within the scope of his employment.

**A.   Legal Standards**

**1. Rule 12(b)(1)**

A motion to dismiss under Rule 12 (b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint.  Fed.R.Civ.P. 12(b)(1).  "A federal court is presumed to lack jurisdiction in a particular case unless the contrary affirmatively appears."  A-Z Intern. v. Phillips, 323 F.3d 1141, 1145 (9th Cir. 2003) (internal quotation marks omitted).  A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually."  Thornhill Publishing Co., Inc. v. General Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979).  When the complaint is challenged for lack of subject matter jurisdiction on its face, all material allegations in the complaint will be taken as true and construed in the light most favorable to plaintiff.  See NL Indus. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986).  When a Rule 12(b)(1) motion attacks the existence of subject matter jurisdiction in fact, no presumption of truthfulness attaches to plaintiff's allegations.  Thornhill Publ'g Co., 594 F.2d at 733.  "[T]he district court is not restricted to the face of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual

disputes concerning the existence of jurisdiction." <u>McCarthy v. United States</u>, 850 F.2d 558, 560 (9th Cir. 1988).  Once the moving party makes a factual attack on jurisdiction by submitting affidavits or any other evidence properly before the court, the opposing party must then submit affidavits or any other evidence necessary to satisfy its burden of establishing subject matter jurisdiction.  <u>Safe Air for Everyone v. Meyer</u>, 373 F.3d 1035, 1039 (9th Cir. 2004).  A court may resolve factual disputes in determining the existence of jurisdiction without converting the motion to one for summary judgment.  <u>See Trentacosta v. Frontier Pacific Aircraft Indus.</u>, 813 F.2d 1553, 1558 (9th Cir. 1987) (citing <u>Thornhill Publ'g Co.</u>, 594 F.2d at 733.).  The burden of proof on a Rule 12(b)(1) motion is on the party asserting jurisdiction.  <u>Thornhill Publ'g Co.</u>, 594 F.2d at 733.

Jurisdictional dismissals in cases premised on federal-question jurisdiction are exceptional, and are only permitted "'where the alleged claim under the constitution or federal statutes clearly appears to be immaterial and made solely for the purpose of obtaining federal jurisdiction or where such claim is wholly insubstantial and frivolous.'"  <u>Roberts v. Corrothers</u>, 812 F.2d 1173, 1177 (9th Cir. 1987); <u>Safe Air for Everyone</u>, 373 F.3d at 1039.  The district court should only rely on Rule 12(b)(1) if the facts necessary to sustain jurisdiction

do not implicate the merits of plaintiff's cause of action.
Safe Air for Everyone, 373 F.3d at 1039.   Put another way, a
jurisdictional finding of genuinely disputed facts is
inappropriate when the jurisdictional issue and substantive
issues are so intertwined that the question of jurisdiction is
dependent on the resolution of factual issues going to the
merits' of an action.   Id.[6]   "The question of jurisdiction and
the merits of an action are intertwined where 'a statute
provides the basis for both the subject matter jurisdiction of
the federal court and the plaintiff's substantive claim for
relief.'"   See Safe Air for Everyone, 373 F.3d at 1039-40.   When
the question of jurisdiction and the merits of the action are so
intertwined that the question of jurisdiction is dependent on
the resolution of factual issues going to the merits, the court
should view the motion as one for summary judgment, not for
dismissal.   Id. at 1040; see Augustine v. United States, 704
F.2d 1074, 1077 (9th Cir. 1983) (in ruling on a jurisdictional
motion involving factual issues which also go to the merits, the
trial court employs the summary judgment standard, as a

---

[6] Where jurisdiction is intertwined with the merits, courts
assume the truth of the allegations in the complaint unless
controverted by undisputed facts in the record.   Warren v. Fox
Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir. 2003).
The court, however, does not assume the truth of legal
conclusions merely because they are cast in the form of factual
allegations.   Roberts, 812 F.2d at 1177.

resolution of the jurisdictional facts which is akin to a decision on the merits).[7]

## 2. Rule 56(c)

Rule 56(b) permits a party whom a claim has been asserted to "move at any time, with or without supporting affidavits, for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(b). Summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party meets its burden, the burden then shifts to the non-moving party to go beyond the pleadings and by his or her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. See id. at 324 (internal quotation marks omitted) (citing Fed.R.Civ.P. 56(e)); Miller v. Glenn Miller Productions, Inc., 454 F.3d 975,

---

[7] Because the question of whether this court has subject matter jurisdiction is properly raised by a Rule 12(b)(1) motion to dismiss, the court need not address whether dismissal is appropriate pursuant to Rule 12(b)(6).

987 (9th Cir. 2006). This burden requires more than a simple showing that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The mere existence of a scintilla of evidence is likewise insufficient to create a genuine factual dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986). "If the nonmoving party fails to produce enough evidence to create a genuine issue of material fact, the moving party wins the motion for summary judgment." Nissan Fire & Marine Ins. Co. v. Fritz Companies, Inc., 210 F.3d 1099, 1103 (9th Cir. 2000). "But if the nonmoving party produces enough evidence to create a genuine issue of material fact, the nonmoving party defeats the motion." Id.

On a motion for summary judgment, all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. Hector v. Wiens, 533 F.2d 429, 432 (9th Cir. 1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. Valadingham v. Bojorquez, 866 F.2d 1135, 1137 (9th Cir. 1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. Sankovich v. Insurance Co. of North America, 638 F.2d 136, 140 (9th Cir. 1981).

//

//

**B.   Subject Matter Jurisdiction**

Except when waived, the United States has sovereign immunity from suit.  <u>United States v. Sherwood</u>, 312 U.S. 584, 586 (1941); <u>see</u> <u>United States v. Mitchell</u>, 463 U.S. 206, 212 (1983) ("It is axiomatic that the United States may not be sued without its consent and that the existence of consent is a prerequisite for jurisdiction.").  The United States must expressly and unambiguously waive its sovereign immunity before it may be subject to suit.  <u>See</u> <u>United States v. Idaho ex rel Director, Idaho Dep't of Water Resources</u>, 508 U.S. 1, 6 (1993). The FTCA is the sole and exclusive statutory waiver of sovereign immunity of the United States for actions alleging tortious conduct.  <u>DSI Corp. v. Sec'y of Hous. & Urban Dev.</u>, 594 F.2d 177, 180 (9th Cir. 1979).  Any waiver of that immunity must be strictly construed in favor of the United States.  <u>See</u> <u>United States v. Nordic Vill. Inc.</u>, 503 U.S. 30, 33-34 (1992).  If a claim does not fall squarely within the strict terms of a waiver of sovereign immunity, a district court is without subject matter jurisdiction.  <u>See</u>, <u>e.g.</u>, <u>Mundy v. United States</u>, 983 F.2d 950, 952 (9th Cir. 1993).

The FTCA provides a waiver of the United States government's sovereign immunity for tort claims arising out of the conduct of government employees acting within the scope of their employment.  <u>Adams v. U.S.</u>, 420 F.3d 1049, 1051 (9th Cir.

2005) (citing 28 U.S.C. § 1346(b)(1)); <u>Pelletier v. Federal Home Loan Bank of San Francisco</u>, 968 F.2d 865, 876 (9th Cir. 1992) (under the FTCA, an individual who has suffered an injury cognizable in tort as a result of the conduct of a federal employee may bring suit against the United States if that employee was "acting within the scope of his office or employment.").[8]   Under the FTCA, federal employees are immune from personal liability only when acting "'within the scope of their official duties *and* the conduct is discretionary in nature.'"   <u>Adams</u>, 420 F.3d at 1052 (emphasis in original).   FTCA immunity issue should be decided at an early stage of the litigation via a motion for summary judgment, unless disputed issues of fact exist relevant to immunity.   <u>Arthur v. U.S. By and Through Veterans Admin.</u>, 45 F.3d 292, 295 (9th Cir. 1995). If disputed issues of fact exist, summary judgment will not be appropriate until the district court has held an evidentiary hearing and resolved the disputes by formal findings.   <u>Id.</u>

---

[8] The FTCA provides that the United States can be sued for personal injury resulting from: "[The] negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred."   28 U.S.C. § 1346(b)(1).

The FTCA provides the exclusive remedy for claims arising against individuals deemed to be employees of the United States Public Health Service ("PHS") and acting within the scope of their employment at the time of the incident giving rise to the claim.  See 42 U.S.C. § 201 et. seq.  Under the Public Health Services Act, entities like SCHC, that receive federal funding under the PHS, and certain employees, including full-time physicians, are deemed to be federal employees for purposes of certain tort actions, including medical malpractice claims. Metcalf v. West Suburban Hosp., 912 F. Supp. 382, 383 (N.D. Ill. 1996).  Any such claims are considered to be claims under the FTCA for which there is exclusive federal jurisdiction.  Id. (citing 42 U.S.C. § 233); see Cuoco v. Moritsugu, 222 F.3d 99, 107 (2d Cir. 2000) (Section 233(a) of the Public Health Service Act makes the FTCA the exclusive remedy for specified actions against Public Health Service members).[9]  Section 233 provides in relevant part: "[t]he remedy against the United States . . . for damage for personal injury, including death, resulting from

---

[9] The purpose of § 233(a) is to protect commissioned officers or employees of the Public Health Service from being subject to suit while performing medical and similar functions by requiring that such lawsuits be brought against the United States instead. Cuoco, 222 F.3d at 108. Individuals deemed to be employees of the United States Public Health Service are entitled to immunity if they were acting within the scope of their employment at the time of the incident giving rise to the claim under § 233(a). See id. at 109.

the performance of medical, surgical, dental, or related functions . . . by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim. 42 U.S.C. § 233(a). Because the remedy provided by the FTCA against the United States is exclusive, the United States must be substituted in place of the health service parties if the conditions of certification set forth in the relevant statutes are met. See 42 U.S.C. § 233(c) ("Upon a certification by the Attorney General that the defendant was acting in the scope of his employment at the time of the incident out of which the suit arose . . . the proceeding [shall be] deemed a tort action brought against the United States."); 28 U.S.C. § 2679(d)(1) (providing that, for federal tort claims, "[u]pon certification by the Attorney General that the defendant employee was acting within the scope of his office or employment at the time of the incident out of which the claim arose . . . the United States shall be substituted as the party defendant").[10]

---

[10] 28 U.S.C. § 2679(b)(1) provides in relevant part: "The remedy against the United States provided by [the Federal Tort Claims Act] for injury or loss of property, or personal injury

The question whether a federal employee whose allegedly tortious conduct is the subject of a lawsuit under the FTCA was "acting within the scope of his office or employment" at the time of the injury is to be answered according to the principles of respondeat superior of the state in which the alleged tort occurred. <u>Pelletier</u>, 968 F.2d at 876. "Under California law, the determinative factor in establishing vicarious liability under the doctrine of respondeat superior is not whether the employee's act was authorized, but whether the act was committed in the course of carrying out the employer's business." <u>Id.</u> "Vicarious liability thus may attach for unauthorized, or even

or death arising or resulting from the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his or her office or employment is exclusive of any other civil action or proceeding for money damages by reason of the same subject matter against the employee whose act or omission gave rise to the claim or against the estate of such employee." If the Attorney General certifies that a United States employee was acting within the scope of his employment at the time of the event giving rise to the civil claim, the United States shall be substituted as the party defendant. <u>See</u> 28 U.S.C. § 2679(d)(1) & (2). If the Attorney General refuses to certify scope of office or employment under this section, the employee may at any time before trial petition the court to find and certify that the employee was acting within the scope of his office or employment. 28 U.S.C. § 2679(c)(3). The only defense against substitution of the United States as the defendant for individual defendants is if the individuals acted outside the scope of their employment. <u>Meridian Int'l Logistics, Inc. v. United States</u>, 939 F.2d 740, 743 (9th Cir. 1991). If the district court determines that the employee was not acting within the scope of his office or employment, the action or proceeding shall be remanded to the State court. 28 U.S.C. § 2679(c)(3).

prohibited, conduct, if the risk of that conduct is one that may fairly be regarded as typical of or broadly incidental to the enterprise undertaken by the employer. Id. (internal quotation marks omitted). "By contrast, vicarious liability does not attach if the employee 'has substantially deviated from his duties for personal purposes.' " Id. The plaintiff bears the burden of establishing that the employee's action for which vicarious liability is sought to be imposed was committed within the scope of the employment. Delfino v. Agilent Technologies, Inc., 145 Cal.App.4th 790, 812 (2006).

An employer "will not be held liable for an assault or other intentional tort that did not have a causal nexus to the employee's work." Lisa M. v. Henry Mayo Newhall Memorial Hospital, 12 Cal.4th 291, 297 (1995). "The nexus required for respondeat superior liability-that the tort be engendered by or arise from the work-is to be distinguished from 'but for' causation. That the employment brought tortfeasor and victim together in time and place is not enough." Id. at 298 (footnote omitted). The required nexus is "the same for intentional and negligent torts." Id. In order for respondeat superior liability to attach, the incident leading to injury must be an "outgrowth" of the employment; the risk of tortious injury must be "inherent in the working environment" or "typical" of or "broadly incidental" to the enterprise the employer has

undertaken.  Id.  Put another way, the tort must be foreseeable from the employee's duties.  Id. at 299.[11]  That is, respondeat superior liability should apply only to the types of injuries that "as a practical matter are sure to occur in the conduct of the employer's enterprise."  Id.[12]  Respondeat superior will not apply to an employee's malicious or tortious conduct if the employee substantially deviates from the employment duties for personal purposes.  Delfino, 145 Cal.App.4th at 812.[13]  Thus, if an employee's tort is personal in nature, mere presence at the place of employment and attendance to occupational duties prior

[11] Foreseeability "merely means that in the context of the particular enterprise an employee's conduct is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business." Lisa M., 12 Cal.4th at 299 (internal quotation marks omitted).

[12] "Respondeat superior liability does not attach simply because employment brought the employee and victim together at a certain time and place.  The employee's activities must be inherent in, typical of or created by the work so that it is a foreseeable risk of the particular employment." Tognazzini v. San Luis Coastal Unified School Dist., 86 Cal.App.4th 1053, 1057 (2001) (citation omitted).

[13] "Notwithstanding the generally broad view given to scope of employment determinations, the law is clear that an employer . . . will not be held vicariously liable for an employee's malicious or tortious conduct if the employee *substantially* deviates from the employment duties for personal purposes. Thus, if the employee inflicts an injury out of personal malice, not engendered by the employment, or acts out of personal malice unconnected with the employment, or if the misconduct is not an outgrowth of the employment, the employee is not acting within the scope of employment. Farmers Ins. Group v. County of Santa Clara, 11 Cal.4th 992, 1004-05 (1995) (citations and internal quotation marks omitted) (emphasis in original).

or subsequent to the offense will not give rise to a cause of action against the employer under the doctrine of respondeat superior.  Id. at 813.  In such cases, the losses do not foreseeably result from the conduct of the employer's enterprise and so are not fairly attributable to the employer as a cost of doing business.  Id.[14]  "Whether a tort was committed within the scope of employment is ordinarily a question of fact; it becomes a question of law, however, where the undisputed facts would not support an inference that the employee was acting within the scope of his employment."  John R. v. Oakland Unified School Dist., 48 Cal.3d 438, 447 (1989).[15]

---

[14] In Lisa M., the California Supreme Court concluded that a hospital was not vicariously liable for an ultrasound imaging technician's sexual molestation of a female patient during a medical examination under the doctrine of respondeat superior. Lisa M., 12 Cal.4th at 294.  There, while the Court determined that the injurious event was causally related to the technician's employment, in that it would not have occurred but for his employment which gave him the opportunity to meet and be alone with the plaintiff, it concluded that the sexual battery was not "engendered by," an "outgrowth" of, " 'typical of or broadly incidental to,' " or "a general foreseeable consequence of" the hospital's enterprise.  Id. at 299-300.  The assault was not motivated or triggered by anything in the employment activity, id. at 301, nor was it a generally foreseeable consequence of the technician's authorized physical contact with a patient.  Id. at 302-03.

[15] Here, neither Defendants nor the United States has pointed to factual disputes that would prevent the court from deciding the applicability of respondeat superior as a matter of law or determine whether Dr. Reinhardt is eligible for immunity under § 233(a).

In the present case, the court concludes, as matter of law, that it does not have subject matter jurisdiction over the instant action because Dr. Reinhardt was not acting within the scope of his employment during the sexual relations giving rise to this suit.   Dr. Reinhardt's alleged sexual relations with Drusilla were not an "outgrowth" of his employment,[16] nor was the risk of sexual relations with patients "inherent" in his working environment" or "typical" of or "broadly incidental" to the enterprise of SCHC.   Dr. Reinhardt's actions, if they occurred as Drusilla contends, were taken solely for personal gratification, were unconnected to his employment, were not incidental to his duties as a physician, and were a substantial deviation from his duties as a physician for personal purposes. Moreover, Dr. Reinhardt's actions were not a generally foreseeable consequence of SCHC's enterprise insofar as Drusilla's alleged injuries were not, as a practical matter, sure to occur in the conduct of the SCHC's enterprise such that her injuries are fairly attributable to SCHC as a cost of doing business.   In other words, because the alleged sexual misconduct

---

[16] The incident leading to Drusilla's alleged injuries was only an "outgrowth" of Dr. Reinhardt's employment insofar as Dr. Reinhardt's employment brought him in contact with Drusilla. This, without more, is insufficient for respondeat superior liability to attach.   See Lisa M., 12 Cal.4th at 298 (holding that, the fact "[t]hat the employment brought tortfeasor and victim together in time and place is not enough.").

was personal in nature (not motivated or triggered by anything in the employment activity), and was unusual and startling in the context of a medical professional's duties, it would be unfair to include the loss resulting from such conduct among the other costs of SCHC's business.   Sexual relations with a patient are not a generally foreseeable consequence of a physicians authorized physical contact with a patient.   Accordingly, because Dr. Reinhardt was not acting within the scope of his employment during the alleged sexual relations giving rise to this suit, government liability is not triggered under the FTCA pursuant to the FSHCAA, and therefore dismissal for lack of subject matter jurisdiction is appropriate.

To the extent that Defendants maintain that Dr. Reinhardt was acting within the scope of his employment based on the concept of "transference phenomenon", the court disagrees. While cases have held that health care professionals acted within scope of their employment to trigger government liability under the FTCA on a theory of respondeat superior when a sexual relationship was initiated with patients during the course of mental health counseling, see e.g., Simmons v. U.S., 805 F.2d 1363 (9th Cir. 1996) (holding that health service counselor was acting within scope of his employment in providing mental health counseling to patient when he wrongfully engaged her in a sexual relationship, and thus government was liable to patient under

FTCA on theory of respondeat superior); <u>Benavidez v. U.S.</u>, 177 F.3d 927 (10th Cir. 1999) (holding that allegations that psychologist negligently manipulated therapeutic relationship so as to engage in sexual contact and drug and alcohol abuse with teen-aged patient stated claim for professional negligence or malpractice for purposes of FTCA), the court finds these cases inapposite.  Both <u>Simmons</u> and <u>Benavidez</u> are distinguishable because those cases, unlike here, involved the concept of "transference phenomenon"[17] and the manipulation of the

---

[17]  In <u>Simmons</u>, the court explained the "transference phenomenon" as follows: "[t]ransference is the term used by psychiatrists and psychologists to denote a patient's emotional reaction to a therapist and is 'generally applied to the projection of feelings, thoughts and wishes onto the analyst, who has come to represent some person from the patient's past.' Transference 'is perhaps regarded as the most significant concept in psychoanalytical therapy, and one of the most important discoveries of Freud.'"  <u>Simmons</u>, 805 F.2d at 1364; <u>see also</u> <u>Benavidez</u>, 177 F.3d at 930 ("[t]he 'transference phenomenon' refers to the tendency of patients to become emotionally dependent upon, and trusting of, their psychologist or psychiatrist."  "[T]ransference 'is one of the most significant concepts in psychoanalytic therapy,' and accounts for the 'strong dependency of the patient upon the therapist'").  "Transference is crucial to the therapeutic process because the patient 'unconsciously attributes to the psychiatrist or analyst those feelings which he may have repressed towards his own parents. . . . [I]t is through the creation, experiencing and resolution of these feelings that [the patient] becomes well.' "  <u>Simmons</u>, 805 F.2d at 1365 (citations omitted).  " 'Inappropriate emotions, both hostile and loving, directed toward the physician are recognized by the psychiatrist as constituting . . . the transference.  The psychiatrist looks for manifestations of the transference, and is prepared to handle it as it develops.' "  <u>Id.</u> (citations omitted).  " 'Understanding of transference forms a basic part of the psychoanalytic

therapeutic relationship for the purpose of instigating a sexual relationship.[18]   In this case, while it is undisputed that Dr. Reinhardt provided care and treatment to Drusilla for depression and anxiety, including the prescription of medications for these conditions, there is no evidence that Dr. Reinhardt engaged in sexual relations with Drusilla through manipulation of the therapeutic relationship, i.e., induced her to engage in sexual relations under the guise of psychiatric therapy or mental

---

technique.'   The proper therapeutic response is countertransference, a reaction which avoids emotional involvement and assists the patient in overcoming problems." Id. (citations omitted).   "Although [transference] occurs in other professional relationships, 'it is only in psychotherapy that the management of this [transference] effect is so critical-legally as well as therapeutically.'   No other professional relationship 'offer[s] a course of treatment and counseling predicated upon handling the transference phenomenon.'   In order to manage the transference phenomenon properly a therapist must avoid emotional involvement with a patient who transfers feelings of affection to him." Benavidez, 177 F.3d at 930 (citations omitted).

[18]   In Benavidez, the gravamen of the complaint was that under the guise of providing counseling, a therapist violated professionally acceptable procedures and induced an emotionally depressed and suicidal teenager, already prone to alcohol and drug abuse, to indulge in the use of such substances and to engage in sexual conduct. Benavidez, 177 F.3d at 932.   There, the court held that the allegations in the Complaint were sufficient to support a claim for professional negligence or malpractice because such allegations fall outside the intentional tort exception to the FTCA's waiver of sovereign immunity. Id.   Similarly, Simmons involved a therapist who induced a vulnerable patient to engage in a sexual relationship under the guise of providing mental health counseling by encouraging the patient to act on her professed feelings of attraction to him. See Simmons v. U.S., 805 F.2d 1363.

health counseling. Defendants do not cite any authority supporting the proposition that sexual relations between a physician and patient arising out the treatment and prescription of medication for anxiety and depression is akin to therapist-patient sexual relations cases involving the "transference phenomenon."[19] As such, Simmons and Benavidez do not compel a finding that Dr. Reinhardt was acting within the scope of his employment during the alleged sexual relations giving rise to this suit.

For these reasons, the court concludes that neither Dr. Reinhardt nor SCHC (under a respondeat liability theory) is entitled to immunity under the FTCA pursuant to the FSHCAA because Dr. Reinhardt was not acting within the scope of his

---

[19] Indeed, both Simmons and Benavidez noted that a distinction exists between a therapist engaging in sexual contact with his emotionally distraught patient under the guise of therapy, and sexual relations between physicians and patients in general. See Simmons, 805 F.2d at 1365-66 (observing that while courts have "uniformly regarded mishandling of transference as malpractice or gross negligence," they "do not routinely impose liability upon physicians in general for sexual contact with patients."); Benavidez, 177 F.3d at 931 n.6 ("courts do not routinely impose liability upon physicians in general for sexual contact with patients."). In Simmons, the court explained that "[t]he crucial factor in the therapist-patient relationship which leads to the imposition of legal liability for conduct which arguably is no more exploitative of a patient than sexual involvement of a lawyer with a client, a priest or minister with a parishioner, or a gynecologist with a patient is that lawyers, ministers and gynecologists do not offer a course of treatment and counseling predicated upon handling the transference phenomenon." Simmons, 805 F.2d at 1366.

employment during the alleged sexual relations giving rise to this suit.   Accordingly, the United States is not a proper party to this action under the doctrine of sovereign immunity, and therefore dismissal for lack of subject matter jurisdiction is appropriate.

## C.   Supplemental Jurisdiction

Where the district court dismisses all federal claims for lack of subject matter jurisdiction on the merits, it has no discretion to retain supplemental jurisdiction to adjudicate the remaining state law claims.   Herman Family Revocable Trust v. Teddy Bear, 254 F.3d 802, 806 (9th Cir. 2001).   Upon dismissal of the United States for lack of subject matter jurisdiction, there remains no underlying original federal subject matter jurisdiction.   As such, there can be no jurisdiction over the remaining state law claims and therefore those claims are dismissed without prejudice.   See Teddy Bear, 254 F.3d at 805 ("If the federal claim is dismissed for lack of subject matter jurisdiction, a district court has no discretion to retain the supplemental claims for adjudication.   The dismissal means that there never was a valid claim within the court's original jurisdiction to which the state claims may be supplemental. Therefore, the district court has no discretion to exceed the scope of its Article III power, and must dismiss the state law claims without prejudice.").

### III. CONCLUSION

For the reasons stated above, the court **GRANTS** the motion. Because the court lacks subject matter jurisdiction over this action, Plaintiffs' remaining state law claims are dismissed without prejudice.

**IT IS SO ORDERED.**

ENTERED this 26th day of February, 2008.

                              s/RALPH R. BEISTLINE
                              United States District Judge